**MILEY v. LOVETT, Secretary of Defense et al.**

No. 6361.

United States Court of Appeals Fourth Circuit.

Argued Jan. 9, 1952.

Decided Jan. 24, 1952.

Writ of Certiorari Denied Jan. 28, 1952. See 72 S.Ct. 366.

Edmund D. Campbell, Washington, D. C. (Douglas, Obear & Campbell, Washington, D. C., on brief), for appellant.

David E. Satterfield, III, Asst. U. S. Atty., Richmond, Va., and Burton K. Phillips, Lieutenant Colonel, Judge Advocate General's Corps, Washington, D. C. (A. Carter Whitehead, U. S. Atty., Richmond, Va., on brief), for appellees.

Before PARKER, Chief Judge, and DOBIE, Circuit Judge, and WARLICK, District Judge.

DOBIE, Circuit Judge.

Captain William H. Miley (hereinafter called petitioner) sought a writ of habeas corpus in the United States District Court for the Eastern District of Virginia, contending that his commission as a captain in the Army of the United States had expired and that, illegally and against his will, he was being held subject to the rules, regulations and discipline of the Army. The District Court entered judgment against petitioner, discharging the writ and dismissing the petition. From this adverse decision, Miley has duly appealed to us. The opinion of the District Judge is reported in 100 F.Supp. 1012.

The facts of the case, about which there is no dispute, are thus set forth in the

opinion below (100 F.Supp. at page 1014): "Upon his application, dated July 31, 1946, the petitioner was on that day, by direction of the President, appointed captain, Judge Advocate General's Department, Officers' Reserve Corps, in the Army of the United States, the commission issuing on January 23, 1947. The commission stipulated that the appointment should date from July 31, 1946 and that it evidenced 'an appointment in the Army of the United States, under the provisions of section 37, National Defense Act, as amended, * * * to continue in force for a period of five years from the date above specified, and during the pleasure of the President of the United States, for the time being.' The petitioner accepted the commission. He was ordered to active duty on January 2, 1951. Continuing on active duty until July 31, 1951, the end of the five years specified in his commission, petitioner sought his separation from the service on the ground that his term had ended. His request was refused by the Army upon the premise that his appointment ran until the passage of six months from the official termination of the war."

■ Petitioner complains of the District Court's denial of his motion to require respondents to produce certain papers, particularly certain rulings and opinions of the Judge Advocate General of the Army. Petitioner has produced and filed digests of a number of these opinions. We find no reversible error in this ruling of the District Judge.

The respondents did not seriously contend that habeas corpus is not the proper remedy here. Petitioner insists that habeas corpus will lie. There are a number of cases holding that habeas corpus is the proper procedure to test whether or not the induction, or drafting, of a person, against his will, into the armed service is legal. See, for example, United States ex rel. Goodman v. Hearn, 4 Cir., 153 F.2d 186; United States ex rel. Phillips v. Downer, 2 Cir., 135 F.2d 521; Arbitman v. Woodside (decided by our Court), 258 F. 441. No case has been found, however, involving the precise question raised in the instant case—whether habeas corpus is proper to determine whether an Army officer's commis-

sion, granted at his request, has, or has not, expired. We do not labor this point. There are many officers in the same position as petitioner, and he has asked the United States Supreme Court to issue certiorari before a decision by our Court. The Supreme Court has not yet ruled on this request. We might, however, treat the petition for habeas corpus as an application for a declaratory judgment. We, therefore, pass to the merits of the case.

Petitioner contends that his commission as captain in the Officers' Reserve Corps of the Army was issued under Section 37 of the National Defense Act, 10 U.S.C.A. § 351 et seq., and that this section is controlling. In pertinent part, this section provides: "All persons appointed in the Officers' Reserve Corps are reserve officers and shall be commissioned in the Army of the United States. [Such appointments in grades below that of brigadier general shall be made by the President alone, and general officers by and with the advice and consent of the Senate.] *Appointments in every case in the Officers' Reserve Corps shall be for a period of five years, but an appointment in force at the outbreak of war shall continue in force until six months after its termination * * *.*" (Italics supplied.)

It is clear that petitioner's letter of appointment to the Officers' Reserve Corps specifically states that the appointment was made under Section 37 of the Defense Act. The commission itself states: "This commission evidences an appointment in the Army of the United States under the provisions of section 37, National Defense Act, as amended, and is to continue in force for a period of five years from the date above specified, * * *."

If petitioner's contention be sound, this five-year period expired on July 31, 1951, and he is now being illegally held in the Army. Petitioner admits, however, that his term of service could be modified and extended by an Act of Congress.

■ Respondents contend that appointments under the authority of Section 37 to the Officers' Reserve Corps of the Army, if made after the outbreak of war (as was

the case with petitioner) are controlled by paragraph 7 of Section 127a of the National Defense Act in such fashion as to prolong their duration until six months after the termination of war. Section 127a, paragraph 7, of the National Defense Act, reads: "In time of war or national emergency determined by the President any officer of the Regular Army may be appointed to higher temporary grade without vacating his permanent appointment. In time of war any officer of the Regular Army appointed to higher temporary grade, and all other persons appointed, as officers, shall be appointed and commissioned in the Army of the United States. Such appointments in grades below that of brigadier general shall be made by the President alone, and general officers by and with the advice and consent of the Senate: Provided, That an appointment, other than that of a member of the Regular Army made in time of war, shall continue until six months after its termination, and an officer appointed in time of war shall be entitled to be relieved from active Federal service within six months after its termination if he makes application therefor."

We think the contention of respondents is sound, and that the judgment of the District Court upholding that contention must be affirmed.

While Congress has not spoken with that crystal clarity which we might expect on so important a subject involving so many people, we yet think the District Judge, applying the recognized rules of statutory construction, arrived at a correct result in interpreting that intention. Since our own reasoning follows closely that of the District Judge, we think it necessary to add little to what was said in the opinion below.

█ We are not impressed by petitioner's argument that Section 127a is applicable only to appointments during war without specification of component and not to appointments in the Army Officers' Reserve Corps. Nor do we think our decision is controlled by the joint resolutions of September 22, 1941, 10 U.S.C.A. § 506d note, December 13, 1941, 50 U.S.C.A.Appendix,

§§ 731–732, 10 U.S.C.A. § 16a, July 25, 1947, 10 U.S.C.A. § 506d note. It could hardly have been the intent of Congress to provide that commissions in the Officers' Reserve Corps of the Army in existence at the outbreak of war should be extended to six months after the termination of war, while similar commissions issued during an actual state of war would not be extended similarly to six months after the termination of war. These resolutions mentioned above did not purport to repeal, and did not repeal, either Section 37 or Section 127a of the National Defense Act.

We are impressed by a recent report (H. R. Rep. No. 1066, 82d Cong., 1st Sess., 27 Sep. 1951) of the Committee on Armed Services of the House of Representatives. That report, rendered in connection with proposed legislation (H. R. 5426, 82d Cong.) to make uniform the laws governing reserve components of all of the Armed Forces, stated pertinently: "The present officer members of the reserve components are also largely veterans of the World War II. Some nonveteran officers have been procured since the end of World War II through the Reserve Officer Training Corps and other officer candidate programs. Reserve Officers of the Army and Air Force were appointed for terms of 5 years subject to continuation until 6 months after the legal termination of World War II. Since World War II has not been legally terminated for that purpose, these officers continue to be Reserve officers even though 5 years have elapsed since their appointments."

We are convinced that Section 127a, paragraph 7 of the National Defense Act is applicable and controlling to officers of the Reserve Corps of the Army appointed during wartime under Section 37. Accordingly, petitioner's term of office must be held to continue until six months after the termination of war. The District Court was, therefore, correct in so holding, and in discharging the writ of habeas corpus and in dismissing the petitioner's petition.

The judgment of the District Court is affirmed.

Affirmed.